UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60114-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

vs.

DERRICK THOMAS,

Defendant.
_____/

FILED by ___ D.C.
SEP 26 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general order of reference from U.S. District Judge Daniel T. K. Hurley for disposition of all pending pretrial criminal motions. Pending before the Court is Defendant's Motion to Suppress Evidence (DE 30). The Government responded (DE 32), and the Court held an evidentiary hearing on September 6, 2011 (DE 41). This matter is ripe for review.

BACKGROUND

Defendant is charged by indictment with being a felon in possession of a firearm and ammunition, and two counts of possession with intent to distribute marijuana. These charges stem from Defendant's alleged recorded sale of marijuana to a confidential informant during a controlled buy. Defendant was arrested ten days later, and police officers seized marijuana and a firearm from within Defendant's residence.

1

## MOTION TO SUPPRESS

Defendant moves to suppress the marijuana and firearm seized from his residence, and all statements made, arguing that this evidence derives from an unlawful search. Defendant describes his residence as a small room, measuring 8 by 9 feet. At the time of Defendant's arrest, police entered his room without a warrant and recovered 8 "baggies" of marijuana from a blue bowl on top of a refrigerator near the front door. After seizing the bowl, police searched the room and found more marijuana and a firearm in a blue cooler. Defendant argues that the blue cooler was in a closet and not in plain view, nor was a protective sweep necessary or exigent circumstances present because (1) Defendant was in custody, (2) the only other occupant – his naked girlfriend on the bed – was secured, and (3) there was no room for an unseen third party. Defendant contends that the police should have obtained an anticipatory search warrant or sought a search warrant after securing the room.

## THE GOVERNMENT'S RESPONSE

In response, the Government argues that the police lawfully arrested Defendant in a public place – his doorway – based upon probable cause to believe Defendant committed a felony – his prior recorded sale of marijuana to a confidential informant. The police lawfully entered Defendant's room to seize marijuana in a blue bowl after seeing it in plain view from outside the residence. Once inside the room, the police conducted a protective sweep during which they made a second plain view observation of a firearm and more marijuana in an open blue cooler inside an open closet. Recognizing the items in the cooler as contraband, the police properly seized them.

## SEPTEMBER 6, 2011 EVIDENTIARY HEARING

Defendant and counsel for both sides appeared at the evidentiary hearing. The Government presented the testimony of Detective Tarek Bazzi and Officer Carlton Smith, both of the Fort Lauderdale Police Department. The Government also introduced into evidence, without objection, the blue soft-sided cooler seized from Defendant's room and five photos taken during the search. Defendant presented no evidence or witnesses and proceeded solely by argument. Defendant made clear that he does not contest the legality of his arrest or the plain view seizure of marijuana from the bowl on top of the refrigerator. Defendant only challenges the subsequent warrantless search of his room leading to the discovery of the blue cooler and its contents.

Detective Tarek Bazzi

Detective Bazzi testified first. Detective Bazzi has 12 years of law enforcement experience. In March 2011, while assigned to a special division tasked with investigating narcotics complaints, Detective Bazzi began investigating numerous citizen complaints identifying an area of Sistrunk Boulevard where drugs were being sold.

During the investigation, a confidential informant told Detective Bazzi that a black female in her twenties and a black male in his thirties were selling marijuana from an apartment at 1500 Sistrunk Boulevard. To corroborate this tip, Detective Bazzi arranged a controlled buy during which the informant, while under police surveillance and equipped with a video/audio recording device, bought four baggies of marijuana from the target apartment. Ten days later, Detective Bazzi and four others —Detective August, Detective Emala,

Detective Steven Smith and Officer Carlton Smith — went to the apartment to make an arrest without an arrest warrant.

All five officers walked up the stairs and through a narrow hallway to the target apartment. First at the door, Detective Bazzi knocked. Within seconds, Defendant opened the door. Detective Bazzi described the apartment as a small square efficiency. As soon as the door opened, Detective Bazzi saw marijuana an arm's length away on a refrigerator to the left. Detective Bazzi recognized Defendant as the person in the recording who sold marijuana to the informant during the prior controlled buy. After seeing the marijuana and recognizing Defendant, Detective Bazzi escorted Defendant out of the room. Detective Emala handcuffed Defendant. While escorting Defendant out, Detective Bazzi alerted the other officers to the marijuana he saw on top of the refrigerator.

After handing Defendant off to Detective Emala, Detective Bazzi returned to the room. A female was located on the room's bed. Detective Bazzi and his fellow officers conducted protective sweeps to ensure no guns or other persons were present. Detective Bazzi briefly scanned the room, but saw no other contraband or persons. Detective Bazzi recalled seeing a closet with no door, but did not look inside because it was "such a small closet that you can actually just glance and know if anybody's in there or not." Detective Bazzi left the room and took Defendant downstairs. While downstairs, Defendant made post-Miranda statements admitting that the marijuana was his and that the female on the bed had nothing to do with it. Shortly thereafter, the other officers radioed Detective Bazzi to advise that they had found more marijuana and a gun in the room.

On cross-examination, Detective Bazzi testified that Defendant's apartment is one of several located on top of a convenience store. Detective Bazzi confirmed that he immediately saw marijuana in a blue bowl on top of a mini-refrigerator to the left as soon as Defendant opened the door. After escorting Defendant out, Detective Bazzi returned to the room. Detective August and Officer Carlton Smith were also in the room, and the officers proceeded to sweep the room. Detective August recovered the marijuana from the bowl on top of the refrigerator. Detective Bazzi testified that he was downstairs with Defendant when the other officers notified him that a gun and more marijuana had been found. This notification came within five minutes of Defendant's removal from the room. Detective Bazzi asked Defendant about the gun and Defendant said he knew nothing about it. Likewise, the female told Detective Bazzi that the gun was not hers and she did not know it was in the apartment. Officer Smith brought the cooler containing the gun and marijuana downstairs.

<u>Officer Carlton Smith</u>

Officer Carlton Smith testified next. Officer Smith has 10 years of law enforcement experience. On March 25, 2011, Officer Smith agreed to assist Detective Bazzi with an arrest. Officer Smith, assigned to a street crimes unit at the time, had no involvement with the investigation leading to the arrest. All he knew was that the person to be arrested had previously sold marijuana.

Officer Smith and several detectives went to a residence located above a market to make the arrest. With Detective Bazzi in the lead, they walked upstairs and down a covered hallway. Officer Smith was a few feet behind Detective Bazzi. Detective Bazzi knocked and

someone opened the door within a few seconds. Detective Bazzi spoke to the person, identified himself as police, and asked the person to exit the room. Once the person was out, Officer Smith and his fellow officers moved into the small efficiency apartment. Detective August entered first to recover marijuana in a blue plastic bowl on top of a refrigerator just inside the front door and to the left.

As Officer Smith entered, he did a quick scan for officer safety. He saw a female on the bed. He also looked inside a closet with no door and was the first to see a blue cooler holding marijuana and a handgun. The cooler's "top was flapped open." Officer Smith said the closet was to the left as you entered the room and the cooler was on the closet's floor, within five feet of the blue bowl of marijuana on the refrigerator. After observing the cooler in the closet, Officer Smith alerted the other officers to its presence and used his cell phone camera to take pictures of it "sitting as it was." He then removed it from the closet, secured the firearm inside, and took the cooler with all its contents to Detective Bazzi in the downstairs parking lot.

Officer Smith recalled that Detectives August and Smith were in the room with him at the time of the search. He recalled being inside Defendant's room for a couple minutes. Detectives Emala and Bazzi were also in the room at some point, but Officer Smith could not recall exactly when or for how long.

On cross-examination, Officer Smith confirmed that Detective Bazzi did not announce "police" when he knocked on Defendant's door. Officer Smith said there were either two or three detectives, including Detective Bazzi, in front of him when the door opened. Once the door opened, Detective Bazzi immediately removed Defendant and took him to Detective

Amala to be handcuffed in the outside hallway. As the handcuffing took place, Officer Smith and the others entered the room. Detective August was the first in the room. As Officer Smith quickly scanned the room, he walked close to the open closet with no door and saw the cooler on the floor. As he stepped forward, he saw the gun inside the cooler. Officer Smith found the gun within seconds of first walking into Defendant's room and after seeing it, he told the other officers that he had found a gun. Officer Smith acknowledged that there were other things in the closet, including shoes, clothes and a laundry basket. Officer Smith testified that as he first entered the room, he could not tell if somebody was inside of the closet and "from the front door, there could be somebody tucked on the left."

Upon inquiry by the Court, Officer Smith described Defendant's apartment as a small square single-room efficiency. He described the room's only closet as a cutout with no door. He estimated the closet as being 5 feet wide and 2 feet deep. Officer Smith's stated purpose for entering Defendant's apartment was "for safety check, [to] make sure there's no other people inside the apartment."

## DISCUSSION

Defendant does not challenge the legality of his arrest, nor does he challenge the plain view seizure of the marijuana in the bowl on top of the refrigerator inside his residence. Defendant's only argument is that after Defendant's arrest, the police conducted an impermissible protective sweep, which warrants the suppression of the additional marijuana and gun found in the blue cooler, and all evidence derived therefrom.[1]

---

[1] Defendant's written motion seeks suppression of statements, but he fails to make any argument in support. The Court need not reach this issue based on its finding that the search was constitutional.

I.  Protective Sweep

The police search of Defendant's apartment was a valid protective sweep. "A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." Maryland v. Buie, 494 U.S. 325, 327 (1990). Such sweep is limited to a cursory inspection of the spaces where a person may be found, and must last no longer than necessary to dispel the reasonable suspicion of danger. Id. at 335-36. In Buie, the Supreme Court upheld the protective sweep of a defendant's basement following his arrest, and provided the following guidance:

> We ... hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Id. at 334; see also U.S. v. Vazquez, 406 Fed. Appx. 430, 433 (11th Cir. 2010).

Here, it is undisputed that the police legally arrested Defendant at his residence. It is further undisputed that as soon as Defendant opened his front door, Detective Bazzi made a plain view observation of marijuana in a blue plastic bowl on a refrigerator inside Defendant's residence. Following this plain view observation, Defendant was immediately removed from the residence. While Detective Bazzi was securing Defendant in the outside hallway with Detective Emala, Officer Smith and the other detectives entered the room. Detective August seized the marijuana from on top of the refrigerator. At some point, Detective Bazzi entered the room. A female was inside the room on a bed. Detective Bazzi and Officer Smith both

credibly testified that each officer who entered Defendant's room conducted a quick scan of the premises to confirm that no other persons were present who might pose a threat.

The protective sweep of Defendant's room occurred immediately after Defendant's arrest and was the cursory type of sweep that Buie permits. The photographs and description of Defendant's room show that it was so small that all areas of the room searched by police adjoined the area of Defendant's arrest at the doorway. There was a short distance between the front door and the open closet where the blue cooler was observed. The photographs show that the open closet had a blind spot where an unseen person could have been hiding. Under these circumstances, the police were entitled to ensure their own safety by conducting a protective sweep to determine that nobody else was present in the room.

Defendant contends that because Detective Bazzi glanced in the closet and saw nobody inside, there was no basis for any further sweeps. The Court disagrees. Defendant cites no authority, nor is the Court aware of any, prohibiting multiple officers from conducting contemporaneous protective sweeps of an area for officer safety incident to a valid arrest.

II.     Items Seized During Protective Sweep.

During the protective sweep, the police constitutionally seized items under the plain view doctrine. "[I]f police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). "If contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment." Id. at 375.

9

Here, it is undisputed that police validly arrested Defendant and seized marijuana which was observed in plain view when the Defendant opened the door. The ensuing protective sweep, which the Court finds valid, led to the discovery of evidence in plain view. Specifically, while sweeping Defendant's room for officer safety, Officer Smith observed in plain view a gun and additional marijuana inside an open cooler located inside an open closet. Thus, he was authorized to seize the incriminating items without a warrant.

## RECOMMENDATION

Because the police lawfully entered Defendant's apartment to seize marijuana observed in plain view and then seized additional marijuana and a firearm observed in plain view during a valid protective sweep, it is respectfully RECOMMENDED that the District Court DENY Defendant's Motion to Suppress Evidence (DE 30).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable U.S. District Judge Daniel T. K. Hurley, within 14 days after being served with a copy. 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. U.S. v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 26 day of September, 2011.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

10